**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

TOBY PACK,

Plaintiff,

v.                                                          CIVIL ACTION NO. 3:24-0688

CSX TRANSPORTATION, INC.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant CSX Transportation, Inc.'s Motion for Reconsideration (ECF 171, Def.'s Mot.). The Motion asks the Court to reconsider its previous order denying Defendant's Motion for Summary Judgment in part. *See* Def.'s Mot. 1. The Court **DENIES** the Motion for Reconsideration. The Court stands by its decision on summary judgment. It will, however, take this opportunity to clarify its prior holding.

**BACKGROUND**

**A.  Factual Background**

In April 2017, Plaintiff Toby Pack, a CSX employee, applied for Family and Medical Leave Act (FMLA) leave for his chronic kidney stones. *See* ECF 158-4. In the medical certification accompanying Pack's application, Pack's physician estimated the condition required intermittent leave up to three times per month for one day per episode. *See id.* CSX approved Pack's application. *See* ECF 158-9, at 14.

On August 23, 2017, Pack called CSX's Crew Management Center (CMC) to request time off. *See id.* at 21. Pack later testified he requested time off because he started to feel pain from his

condition and believed he would need to see a doctor. ECF 158-3, at 51. Pack testified that, when he called, he was transferred several times. *Id.* at 60, 63. Eventually, Pack and a CMC representative had the following exchange:

> Pack: Uh yeah, can I get a personal day in for tomorrow cause uh my kids uh starting a new school.
> CMC Desk: Let me see if one's available. It's not available for tomorrow there Mr. Pack.
> . . .
> Pack: Well: [sic] okay. well [sic] um I guess you'll have to lay me off FMLA then.
> CMC Desk: Okay, so FMLA for your kids [sic] school event; alright, understood I'll get you laid off, okay.
> Pack: Thank you.

ECF 158-9 at 21.

Pack later "testified that he needed to be off both because his kids were starting a new school and because his medical condition had started to flare up . . . ." ECF 160, at 6 (emphasis in original omitted) (citing ECF 158-13, at 24). He explained he initially asked for a personal day, rather than FMLA leave, so he would be paid for the day and could avoid "us[ing] up" the FMLA time for which he had been approved. ECF 158-3, at 60.

In previous calls, Pack had tried to explain to the CMC representative his reason for taking FMLA leave. *See id.* at 46. But the representatives in those calls had told him they did not "need to know that." *Id.*

Pack ended up taking four days of medical leave. *See id.* at 57.

Based on the phone exchange with the CMC representative, "CSX charged Pack with FMLA misuse and removed him from service pending an investigatory hearing." ECF 160, at 5.

CSX Trainmaster Michael Ward oversaw Pack's hearing. *See* ECF 158-13, at 1. CSX's FMLA Manager, Jolanda Johnson, served as CSX's witness. *See id.* Johnson said it was clear, based on Pack's exchange with the CMC representative, that "Pack marked off FMLA for an

unapproved reason"—so clear that "[t]here wasn't a need" for CSX to "determine if the leave that [Pack] requested was actually used . . . for purposes of the FMLA." *Id.* at 13–14. Johnson refused to say whether CSX prohibits employees from attending to family obligations while on FMLA leave. *Id.* at 14–16.

During the hearing, Pack testified he saw a doctor for his flare up. *See id.* at 30. He gave Ward a doctor's note dated August 24, 2017 which stated Pack had been under a doctor's care "from 8/24/17 to 8/27/27." ECF 158-9, at 27; *see* ECF 158-13, at 28.

After the hearing, Ward concluded Pack had misused FMLA leave. *See* ECF 158-14. CSX then terminated Pack. *See* ECF 158-6.

In 2016, CSX implemented a system to automatically identify employees who might be misusing FMLA leave.  *See* ECF 165-2, at 40–42. The system flagged employees who, within the past twelve weeks, had taken FMLA leave on (1) four weekend days or (2) four weekdays adjacent to a day off. *See id.* at 58–61. It also flagged employees who had used FMLA leave on four of the past ten holidays. *See id.* at 115–16; *Parker v. CSX Transp., Inc.*, No. 2:18-cv-00274, 2021 WL 3022703, at *6 (N.D. Ala. July 16, 2021). If an employee was flagged three times, they faced a disciplinary hearing and potential dismissal. *See* ECF 165-2, at 102–03. After the 2017 holidays, CSX relied on this system to remove every employee who used FMLA during the holidays from service, unless the leave was for cancer, terminal illness, or childbirth. *See id.* at 114–15, 126–28, 144–45.

Pack sued, alleging that CSX interfered with his right to take FMLA leave and terminated him in retaliation for his going on leave. *See* ECF 147, 2d Amend. Compl. ¶¶ 44, 47. CSX moved for summary judgment, arguing Pack cannot "prove that CSX did not honestly believe he misused FMLA leave and did not truly discipline him on that basis." ECF 160, at 1.

### B. The Court's Prior Ruling

The Court granted summary judgment with respect to Pack's FMLA interference claim. *See* ECF 170, at 5. It concluded, however, that Pack had offered sufficient evidence to present his FMLA retaliation claim to a jury. *See id.*

The Court began its analysis by quoting the Sixth Circuit's decision in *Smith v. Chrysler Corp.*:

> When [an] employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held.

*Id.* at 4 (quoting 155 F.3d 799, 807–08 (6th Cir. 1988)). The Court also noted that the Fourth Circuit, in *Sharif v. United Airlines, Inc.*, had quoted *Smith*. *See id.* (citing 841 F.3d 199, 206 (4th Cir. 2016)).

The Court then concluded "Pack ha[d] produced 'sufficient evidence to establish that' CSX's decision to terminate him was not 'reasonably informed and considered.'" ECF 170, at 4 (quoting *Smith*, 155 F.3d at 807). The Court explained that, since the evidence that Pack misused FMLA leave was so limited, a reasonable juror could find "that CSX's purported reason for terminating Pack was pretextual." *Id.* at 5.

## STANDARD OF REVIEW

"[A] district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). "[A] court may revise an interlocutory order" due to "(1) a 'subsequent trial producing substantially different evidence'; (2) a change in

-4-

applicable law; or (3) clear error causing 'manifest injustice.'" *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (quoting *Am. Canoe*, 325 F.3d at 515).

CSX argues that "clear error" justifies reconsideration here. *See* ECF 172, Def.'s Mem. 6. "A prior decision does not qualify for" the clear-error exception "by being 'just maybe or probably wrong; it must strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 65 F.3d 166, 1995 WL 520978, at *5 n.6 (4th Cir. 2009) (unpublished table decision)).

## ANALYSIS

The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). To make out a retaliation claim, "a plaintiff must show 'that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.'" *Sharif*, 841 F.3d at 203 (quoting *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006)).

When a plaintiff lacks direct evidence of retaliatory intent, the plaintiff must establish intent through the "burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973)." *Id.* Under this framework:

> [A] plaintiff must first produce sufficient evidence to establish a prima facie case that the elements of retaliation are satisfied. The burden of production then shifts to the employer to rebut the prima facie presumption of retaliation and provide 'some legitimate, nondiscriminatory reason' for the adverse employment action. If the employer meets this burden, the presumption of retaliation is dissolved and the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination.

*Id.* (quoting *McDonnell*, 411 U.S. at 802) (internal citations omitted). As CSX acknowledges, "[t]he step at issue here is the final one: the plaintiff's burden to prove pretext." Def.'s Mem. 7.

CSX argues the Court clearly erred by applying "a standard that evaluates the sufficiency of CSX's decision-making process rather than the dispositive question required by Fourth Circuit law: whether CSX acted in good faith for the reason it gave." *Id.* at 6. First, CSX argues Fourth Circuit precedent "forecloses any attempt to prove pretext by second-guessing the adequacy of an employer's investigation or decision-making process." *Id.* at 9. Second, it argues the Court erred by relying on *Smith* and suggesting *Sharif* "import[ed] *Smith*'s process-based standard." *Id.* at 11; *see id.* at 10. The Court addresses each argument in turn. It then expands on its reasons for denying summary judgment.

### A. A Thin Basis for Terminating an Employee May Establish Pretext

As CSX points out, *see id.* at 8, "[w]hen an employer gives a legitimate, non-discriminatory reason for discharging [an employee], 'it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, . . . so long as it truly was the reason for the plaintiff's termination,'" *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). The court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

CSX concludes, based on these statements, that Fourth Circuit precedent forbids "inquiries into the thoroughness of an employer's decision-making process." Def.'s Mem. 8. The Court disagrees. Fourth Circuit precedent clearly establishes that the relevant standard—the question the jury must answer—is whether the employer had a retaliatory motive, not whether the employer's decision to terminate the employee was correct. But caselaw does not preclude a jury from

answering that question by considering facts about the employer's investigation of the alleged misconduct, the employer's process for deciding whether to terminate the employee, and the employer's purported basis for the termination. The Fourth Circuit's decision in *Laing v. Federal Exp. Corp.* helps explain this distinction:

> [I]n attempting to defend the conduct that led to her termination, all Laing has proven is the unexceptional fact that she disagrees with the outcome of FedEx's investigation. But such disagreement does not prove that FedEx's decision to fire her for falsifying her records was dishonest or not the real reason for her termination, which is what is required at step three of the burden-shifting framework. . . .
>
> To be clear, *if FedEx's disciplinary action had been based on little evidence of wrongdoing, a genuine issue might exist as to pretext*.

703 F.3d 713, 722 (4th Cir. 2013) (cleaned up) (emphasis added). While it is not the Court or the jury's job to decide whether a termination was "wise, fair, or correct," a remarkably unwise, unfair, or incorrect decision may be probative evidence of retaliatory intent. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").

Defendant argues this is at odds with the Fourth Circuit's decisions in *Adkins v. CSX Transportation, Inc.* and *Shipton v. Baltimore Gas and Electric Company*. *See* Def.'s Mot. 8. In *Adkins*, the defendant had fired dozens of employees after they submitted nearly identical FMLA forms, all of which were signed by one of two chiropractors. *See* 70 F.4th 785, 790–91 (4th Cir. 2023). The plaintiffs in *Adkins* argued they presented sufficient evidence of pretext for two reasons: (1) the defendant's Chief Medical Officer, Dr. Heligman, "was the only witness who testified on behalf of the company" at the plaintiffs' disciplinary hearings, "and by the time he testified, . . . he had already concluded that the Plaintiffs engaged in fraud and were guilty," and

(2) the defendant "did not identify any conclusive evidence of fraud . . . ." *Id.* at 793 (cleaned up). The Fourth Circuit rejected this argument, explaining "that while Dr. Heligman's conclusions may have been 'predetermined' as of the time of the hearings, that fact does not make the conclusions pretextual." *Id.* The court noted that the "clear pattern" in the forms the employees submitted "well supported" Dr. Heligman's suspicion. *Id.*

In *Shipton*, the defendant had fired an employee, purportedly because there was "conflicting medical documentation" in his FMLA paperwork. 109 F.4th 701, 705–06 (4th Cir. 2014). The Fourth Circuit concluded there was no evidence of pretext, explaining it was "undisputed" that the plaintiff "submitted conflicting medical paperwork" his employer "could not reconcile . . . ." *Id.* at 709.

Neither *Adkins* nor *Shipton* limits the scope of evidence a jury may consider in deciding whether an employer's purported basis for terminating an employee was pretextual. They simply confirm what no one disputes: to survive summary judgment, a plaintiff must adduce affirmative evidence of pretext. The plaintiffs in *Adkins* and *Shipton* offered no such evidence.

## B. *Smith* Is Persuasive and Consistent with Fourth Circuit Precedent

As noted above, the Court's original order denying summary judgment quoted the Sixth Circuit's decision in *Smith* and noted that the Fourth Circuit quoted *Smith* in *Sharif*. The Court's original discussion of *Smith* and *Sharif* was potentially misleading. In *Smith*, the Sixth Circuit stated:

> When [an] employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held.

155 F.3d at 807–08. It separately said that "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* at 807. This Court's original opinion seemed to suggest that *Sharif* quoted the former statement from *Smith*. *See* ECF 170, at 4. *Sharif* actually quoted the latter statement. *See Sharif*, 841 F.3d at 206.

At the time the Court issued its original decision, CSX had expressly agreed the latter statement from *Smith* governed in this case:

> And although "*the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action*," the employer is under "no obligation to pursue additional investigation when it has more than ample reason to believe it has been lied to." *Sharif*, 841 F.3d at 206 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).

ECF 168, at 5 (emphasis added). CSX has now changed its mind, arguing the Court erred by asking whether "CSX failed to make a 'reasonably informed and considered decision.'" Def.'s Mem. 1.

Defendant asserts *Smith*'s framework is at odds with the Fourth Circuit's decisions in *Sharif*, *Shipton*, and *Adkins*. *See id.* at 10–11. As the Court already explained, *Shipton* and *Adkins* do not hold that evidence of pretext cannot come from flaws in the defendant's decision-making process, a limited investigation of the alleged misconduct, or a thin basis for terminating the plaintiff. Neither does *Sharif*. In fact, *Sharif* states that the "failure to comply with established investigatory procedures *might indeed* be evidence of improper motive . . . ." 841 F.3d at 206 (emphasis added).

As CSX correctly concludes, "*Sharif* . . . stands for the proposition that an employer need not conduct a perfect investigation—it need only act on a genuine, reasonably grounded belief." Def.'s Mem. 11; *see Sharif*, 841 F.3d at 206 (holding that an employer has "no obligation to pursue additional investigation when it ha[s] more than ample reason to believe it ha[s] been lied to").

But that does not mean a flawed or unreasonably limited investigation cannot suggest pretext; it may well demonstrate the employer did not "act on a genuine, reasonably grounded belief."

CSX also argues the Court should not have cited "*Sharif* to justify importing *Smith*'s process-based standard." Def.'s Mem. 11; *see id.* at 10. While *Sharif* seems to have cited *Smith* with approval,[1] *see Sharif*, 841 F.3d at 206, the Court agrees that *Sharif* did not "import" the Sixth Circuit's framework for FMLA retaliation.

Regardless, the Court finds *Smith* persuasive. Its analysis aligns with both Supreme Court and Fourth Circuit precedent. *See Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); *Shipton*, 109 F.4th at 709 n.5 ("Of course, we do not hold that an employer has carte blanche authority to terminate an employee on the basis of unsubstantiated claims of misconduct related to FMLA leave. An employer must have a legitimate basis for believing an employee committed misconduct related to use of FMLA leave."); *Sharif*, 841 F.3d at 206 ("[F]ailure to comply with established investigatory procedures might indeed be evidence of improper motive . . . ."); *Laing*, 703 F.3d at 722 ("[I]f FedEx's disciplinary action had been based on little evidence of wrongdoing, a genuine issue might exist as to pretext."). Accordingly, the Court applied the correct legal standard in ruling on CSX's Motion for Summary Judgment.

### C.  Defendant Is Not Entitled to Summary Judgment

Pack has pointed to several pieces of evidence that suggest pretext. *First*, CSX's decision to terminate Pack rested solely on the transcript of Pack's call with the CMC. Nothing in that call could have given CSX an "ample reason to believe" Pack was misusing FMLA leave. *Sharif*, 841

---

[1] The Fourth Circuit also cited *Smith* approvingly in *EEOC v. Sears Roebuck & Co. See* 243 F.3d 846, 853–54 (4th Cir. 2001).

F.3d at 206. While Pack initially asked for a personal day and then requested FMLA leave when he learned a personal day was not available, Pack provided a reasonable explanation for the revised request: he needed to take off for both personal and medical reasons, and taking a personal day would allow him to keep getting paid.

It is also true that Pack did not object when the CMC operator said "FMLA for your kid[']s school event; alright, understood . . . ." But given Pack's testimony that he had been transferred several times beforehand, it is unsurprising Pack did not want to extend the call by clarifying the reasons for his leave request, especially since CMC operators had rebuffed his attempts to explain his need for leave in the past.

Pack's doctor's note further weakens CSX's basis for terminating him. CSX makes much of the fact that the note was dated August 24, the day after Pack called to request medical leave. *See* Def.'s Mem. 3, 12; ECF 175, at 6; ECF 160, at 6, 12; ECF 168, at 9. But even if this decreases the probative value of the note somewhat, the note still makes CSX's conclusion that Pack abused leave less reasonable.

As CSX states, "the relevant question is whether the employer truly believed the reason it gave . . . ." Def.'s Mem. 13. Here, CSX's purported basis for terminating Pack was so thin that a reasonable juror could conclude CSX did not "truly believe[] the reason it gave."

*Second*, CSX made no attempt to investigate whether Pack had misused FMLA leave. Ms. Johnson said "[t]here wasn't a need" for CSX to "determine if the leave that [Pack] requested was actually used for FMLA protection or for purposes of the FMLA."

In *EEOC v. Sears Roebuck & Co.*, the Fourth Circuit reversed a grant of summary judgment where an employer had declined to hire the plaintiff, purportedly because the employer believed the plaintiff had been investigated for sexual harassment. *See* 243 F.3d 846, 849–50, 857 (4th Cir.

2001). The plaintiff had not, in fact, been investigated. *See id.* at 853. The Fourth Circuit held that the employer's failure to verify whether the plaintiff had been investigated constituted evidence of pretext. *See id.* ("A juror could easily find it implausible that [the employer] would reject a qualified applicant . . . without first substantiating that he was, in fact, the individual accused of sexual harassment.").

Similarly, CSX's failure to investigate whether Pack abused medical leave may demonstrate pretext. Given the limited evidence that Pack used FMLA time for an unapproved reason, "[a] juror could easily find it implausible" that CSX would have fired him without further inquiry.

*Third*, CSX's historical treatment of FMLA abuse cases reflects a continued pattern of discouraging FMLA leave use. Its decision to automatically suspend employees who took FMLA leave on holidays is especially troubling. *See Parker*, 2021 WL 3022703, at *16 ("The reverberating message CSX sent to employees with its arbitrary test is clear: use FMLA leave over the holidays, and you may be taken out of service to face charges of misuse. The chilling effect of CSX's mass charging of employees with FMLA misuse based on an arbitrary 4-in-10 test is unmistakable.").

These facts distinguish this case from *Sharif*, *Adkins*, and *Shipton*. In *Sharif*, the Fourth Circuit upheld a grant of summary judgment in a FMLA retaliation suit. *See* 841 F.3d at 207. The defendant had investigated the plaintiff after the plaintiff took medical leave while he was on vacation. *See id.* at 201. When later asked about his absence, the plaintiff "sat in silence" and then gave "inconsistent answers" about the reason he took leave. *Id.* at 202. The plaintiff never gave the defendant any evidence to support his explanation for taking leave. *See id.* at 205. Also, the defendant had not been "historically hostile to FMLA leave in any discernable way." *Id.* Based on

these facts, the court concluded the defendant had "more than ample reason to believe" the plaintiff had misused FMLA leave. *Id.* at 206. Here, CSX had much less reason to believe Pack had taken leave for an unapproved reason, and Pack provided CSX with affirmative evidence that he was experiencing a flare-up of his condition when he went on leave. In addition, evidence suggests CSX has been historically hostile to FMLA leave.

In *Adkins*, there was substantial evidence that the plaintiffs had misused FMLA leave: dozens of employees had submitted nearly identical FMLA forms, all of which were signed by one of two chiropractors. *See* 70 F.4th at 790. Also, the Fourth Circuit concluded that the plaintiffs had "failed to put forward any evidence" of pretext. *Id.* at 794 (emphasis in original omitted). Here, CSX's basis for terminating Pack—the CMC call transcript—is far less suspicious than the overlapping forms in *Adkins*, and Pack has offered several pieces of evidence to support his claim of pretext.

Finally, in *Shipton*, it was undisputed that the plaintiff had submitted conflicting medical documentation to his employer. Here, whether Pack misused FMLA leave was very much in dispute. He provided a reasonable explanation for initially asking the CMC desk for a personal day, and the doctor's note supported his claim that he was experiencing a medical episode.

Based on the evidence in the record, a reasonable juror could conclude that CSX's purported reason for terminating Pack was pretextual.

## CONCLUSION

The Court did not clearly err in denying Defendant's Motion for Summary Judgment. Accordingly, the Court **DENIES** Defendant's Motion for Reconsideration.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          March 25, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE